IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

|  |  |  |
|---|---|---|
| In re | ) | CIVIL NO. 20-00240 JAO-RT |
|  | ) |  |
| HAWAII ISLAND AIR, INC., | ) | ORDER VACATING BANKRUPTCY |
|  | ) | COURT'S ORDER ON PLAINTIFF'S |
|  | ) | MOTION FOR PARTIAL SUMMARY |
| Debtor. | ) | JUDGMENT |
|  | ) |  |
|  | ) |  |
|  | ) |  |
| ISLAND LEASING, LLC, | ) |  |
|  | ) |  |
| Appellant, | ) |  |
|  | ) |  |
| vs. | ) |  |
|  | ) |  |
| ELIZABETH A. KANE, Bankruptcy | ) |  |
| Trustee; AAR SUPPLY CHAIN | ) |  |
| INC., dba AAR ALLEN ASSET | ) |  |
| MGMT — ALLEN  AIRCRAFT, | ) |  |
|  | ) |  |
| Appellees. | ) |  |

**ORDER VACATING BANKRUPTCY COURT'S ORDER ON
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Appellant Island Leasing, LLC appeals an order entered by the Bankruptcy

Court granting Trustee Appellee Elizabeth A. Kane's motion for partial summary

judgment, determining that Debtor Hawaii Island Air, Inc.'s shipment of certain

aircraft parts to AAR Supply Chain, Inc. on the same day that the Debtor filed for

bankruptcy constituted a post-petition transfer.  For the following reasons, the

Court VACATES the order and remands the case to the Bankruptcy Court for

further proceedings.

## I.    BACKGROUND

### A.    Facts[1]

Hawaii Island Air, Inc. ("the Debtor") operated an interisland airline

business, leasing ATR airplanes from Appellant Island Leasing, LLC ("Island

Leasing").  TER195.[2]  By June 2017, the Debtor had transitioned from ATR

aircraft to a fleet of Q400 aircraft and the Debtor and Island Leasing therefore

began seeking third-party purchasers for the ATR aircraft Island Leasing owned

and certain ATR spare parts that the Debtor owned.  TER196.

AAR Supply Chain, Inc. ("AAR")[3] was a third-party purchaser and on

August 9, 2017 issued a Purchase Order in the amount of $1,200,000.00 to the

Debtor for certain aircraft parts (the "Purchase Order"), which included spare parts

---

[1]  The Court declines to consider any trial testimony in this summary judgment
appeal, despite Island Leasing's repeated citations to the trial transcript.  *See
Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (explaining that a
reviewing court cannot "erroneously rely on evidence outside the summary
judgment record" and that the court is "limited to the … evidence available to the
court at the time the motion was made" (internal quotation marks and citations
omitted) (ellipsis in original)).

[2]  The term "TER" refers to the Trustee's Excerpts of Record, which is Bates-
stamped accordingly and available in attachments to ECF No. 13.

[3]  AAR is nominally an appellee in this appeal but did not file any briefs or
otherwise participate in the appeal.

owned by the Debtor.  ER00138–40, ER00545.[4]  AAR was obligated to pay the

Debtor in three equal installments, with the final installment due "after shipment."

ER00138.  The "Title and Risk of Loss" term stated:  "Title and risk of loss of

goods purchased hereunder will be borne by Vendor until goods are received, in

accordance with the terms hereof, at the FOB point specified herein at which time

title and risk of loss will be borne by Buyer."  ER00140.  The Purchase Order

included an "Origin" F.O.B. term and a "COL" freight term.  ER00138  The

Purchase Order contained a choice-of-law provision specifying that the Purchase

Order is governed by Illinois law.  ER00140  The Debtor and Island Leasing

agreed that the Debtor would receive the first installment payment under the

Purchase Order and that Island Leasing would receive the second and third

installment payments.  ER00546.

On August 16, 2017, AAR's Vice President of Trading, Scott Holdman

("Holdman"), emailed Porter Mackenzie, the Debtor's Director of Maintenance

("Mackenzie"):

> With regards to shipping, I spoke with our tax department again
> and we really need for [the Debtor] to ship the goods to AAR and
> be the shipper of record.  If you use our account number, we still
> could be liable for tax which is pretty hefty.

---

[4]  The term "ER" refers to the Excerpts of Record, which is Bates-stamped
accordingly and available in attachments to ECF No. 10, and ECF Nos. 11–12 and
their attachments.

ER000232.  Mackenzie responded, "Oh that's right... you did mention that... sorry,

my bad.  Can you confirm the shipping address and point of contact as well as any

special instructions?"  *Id.*

On October 16, 2017, the Debtor shipped a portion of the aircraft parts

specified in the Purchase Order to AAR on the Debtor's FedEx account (the

"October 16 Shipment").  ER00879–80.  There is no evidence as to the precise

time at which FedEx took possession of the aircraft parts from the Debtor.  At 1:55

p.m. that same day, the Debtor filed its voluntary chapter 11 bankruptcy petition.

ER00713.  AAR accepted delivery of the October 16 Shipment in Illinois on

October 18, 2017.  ER00886–88.

## B.    Procedural History

On March 16, 2018, Trustee Elizabeth A. Kane ("the Trustee") commenced

an adversary proceeding by filing a complaint against Island Leasing regarding the

aircraft parts transaction involving the Debtor, Island Leasing, and AAR in the

Debtor's bankruptcy action, which had been converted to a chapter 7 bankruptcy.

ER00001–09.

On June 15, 2018, the Trustee filed her First Amended Complaint, which

included the following claims:  Preferential Transfer under 11 U.S.C. § 547(b)

(Count I); Declaratory Judgment (Count II); and Fraudulent Transfer Pursuant to

11 U.S.C. §§ 549 and 550 (Count III).  ER00021–31.

The Trustee moved for partial summary on Count III of the First Amended Complaint, ER00083–110, and the Bankruptcy Court held a hearing on the Trustee's motion for partial summary judgment on July 15, 2019.  ER01206–51. The Bankruptcy Court orally found, "the change in the shipper of record can only be understood as a deliberate choice by AAR to have the effective date of the transfer be upon delivery to AAR on the mainland, which happened on the 18th [of October, 2017.]"  ER01244.  The Bankruptcy Court further found, "AAR feared, perhaps wrongly, they would be incurring additional Hawaii tax if the original FOB term were honored" and that AAR's "intention was to change that provision." ER01245.

On July 19, 2019, the Bankruptcy Court issued its Order on Plaintiff's Motion for Partial Summary Judgment, granting in part and denying in part the Trustee's motion.  ER01188–91.  The Bankruptcy Court ruled that the October 16 Shipment was a post-petition transfer and that Island Leasing was "the entity for whose benefit the transfer was made" under Section 550(a)(1) of the Bankruptcy Code.  ER01189–90.

On May 11, 2020, the Bankruptcy Court issued an order certifying its July 19, 2019 order as a final order under Rule 54(b).  ER01265–66.  Island Leasing commenced this appeal on May 22, 2020 by filing its Notice of Appeal in the Bankruptcy Court.  ER001267–68.

## II.   STANDARD OF REVIEW

The Court reviews a bankruptcy court's grant of summary judgment de novo. *See In re Bullion Reserve of N. Am.*, 922 F.2d 544, 546 (9th Cir. 1991) (citation omitted).  The Court, sitting as an appellate court, "must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the [trial] court correctly applied the relevant substantive law." *Id.* (citations omitted).  "On a motion for summary judgment, all reasonable inferences are drawn in favor of the non-moving party." *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted).  The Court "may affirm the grant of summary judgment on any basis supported by the record." *Id.* (citation omitted).

## III.   DISCUSSION

The Bankruptcy Code permits the Trustee to "avoid a transfer of property of the estate . . . that occurs after the commencement of the case."  11 U.S.C. § 549 (a)(1).  The Code defines "transfer" as "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with . . . property; or . . . an interest in property." 11 U.S.C. § 101(54)(D).  The parties agree that a transfer occurs when title passes. *See* ECF No. 10 at 12 (citing *id.*); ECF No. 13 at 17–18 (same).

The terms of the Purchase Order are not in dispute, and the parties do not contest the fact that the Purchase Order required title to pass "at the FOB point." *See* ECF No. 10 at 19; ECF No. 13 at 10. Nor do the parties disagree that, under the Purchase Order, "the FOB point" was at "Origin," meaning that title would have passed at the moment FedEx picked up the goods, and that the time of day that FedEx picked up the goods has not been established. It is also undisputed that the freight term "COL" meant that AAR would pay for the shipment. The parties also agree that Article Two of the Uniform Commercial Code (the "UCC") governs the transaction at issue—Island Leasing cites Illinois' UCC statutes, while the Trustee cites both Hawai'i and Illinois' UCC statutes, noting that the Purchase Order included an Illinois choice-of-law provision, but that the goods were located in Hawai'i. *Compare* ECF No. 10 at 9, *with* ECF No. 13 at 24 n.11. The Court applies Illinois law as the issue here is when title to the goods in the October 16 Shipment passed from the Debtor to AAR under the Purchase Order, which contains the choice-of-law provision. *See Hawaiian Telcom Commc'ns, Inc. v. Tata Am. Int'l Corp.*, Civil No. 10-00112 HG-LEK, 2010 WL 2594482, at *5 n.7 (D. Haw. May 24, 2010) (stating that under Hawai'i law, the "parties' choice of law provision will be upheld if that law has some nexus with either the parties or the contract" (citing *Del Monte Fresh Produce (Haw.), Inc. v. Fireman's Fund Ins. Co.*, 117 Hawai'i 357, 364–65, 183 P.3d 734,741–42 (2003))), *report and*

*recommendation adopted by* Civil No. 10-00112 HG-LEK, 2010 WL 2594495 (D.

Haw. June 24, 2010).

What *is* in dispute is whether the emails between Holdman and Mackenzie

altered the terms of the Purchase Order so as to change when title to the goods

passed to AAR.  The Trustee contends that the emails modified the shipping terms,

thereby redefining the F.O.B. location.  ECF No. 13 at 26–27.  Island Leasing

argues that the emails only changed who paid for the shipment; they did not alter

the Purchase Order's F.O.B. term and only modified the separate "COL" (freight)

term.  ECF No. 10 at 15–16.

Article Two, Section 401 of the UCC governs when title to goods passes

from the seller to the buyer:

> (2) *Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods*, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place; and in particular and despite any reservation of a security interest by the bill of lading
>      (a) *if the contract requires or authorizes the seller to send the goods to the buyer but does not require him to deliver them at destination, title passes to the buyer at the time and place of shipment*; and
>      (b) *if the contract requires delivery at destination, title passes on tender there*.

810 Ill. Comp. Stat. 5/2-401(2) (emphases added).  Thus, when a contract is

otherwise silent on the matter, the determination of when title passes depends on

8

whether it is a "shipment contract" (where the seller is not required to deliver the

goods to the buyer) or a "destination contract" (where the seller must deliver the

goods to the buyer).  *See Galicia v. Country Coach, Inc.*, 324 F. App'x 687, 688–

89 (9th Cir. 2009) (construing a similar provision under California's enactment of

the UCC).  Under a shipment contract, title passes to the buyer at the time of

shipment, whereas under a destination contract, title passes upon delivery to the

buyer.  *See* 810 Ill. Comp. Stat. 5/2-401(2).  Moreover, under a destination

contract, the seller assumes the added obligations to "put and hold conforming

goods at the buyer's disposition [at the destination] and give the buyer any

notification reasonably necessary to enable him to take delivery."  *June G. Ashton*

*Interiors v. Stark Carpet Corp.*, 491 N.E.2d 120, 124 (Ill. App. Ct. 1986) (quoting

810 Ill. Comp. Stat. 5/2-503(1), formerly cited as Ill. Rev. Stat., ch. 26, ¶¶ 2-

503(1)) (alterations in original) (other citation omitted).

Article Two, Section 503 of the UCC governs the manner of the seller's

tender of delivery.  Comment 5 to this section makes clear that payment for

shipping does not convert a shipment contract into a destination contract:

> For the purposes of subsections (2) and (3)[5] *there is omitted*
> *from this Article the rule under prior uniform legislation that a*

---

5  Subsections (2) and (3) state:

(2) Where the case is within the next section respecting shipment tender
requires that the seller comply with its provisions.

> *term requiring the seller to pay the freight or cost of transportation to the buyer is equivalent to an agreement by the seller to deliver to the buyer or at an agreed destination.* This omission is with the specific intention of negating the rule, for *under this Article the "shipment" contract is regarded as the normal one and the "destination" contract as the variant type.* The seller is not obligated to deliver at a named destination and bear the concurrent risk of loss until arrival, unless he has specifically agreed so to deliver or the commercial understanding of the terms used by the parties contemplates such delivery.

810 Ill. Comp. Stat. 5/2-503 cmt. 5 (emphases added).  Indeed, the UCC "creates a clear presumption in favor of a shipment contract, which does not require delivery of goods at a particular destination[.]" *Mach Mold Inc. v. Clover Assocs., Inc.*, 383 F. Supp. 2d 1015, 1028 (N.D. Ill. 2005) (citing U.C.C. § 2-503, cmt. 5).

Neither the Purchase Order nor the emails between Holdman and Mackenzie obligated the Debtor to transport the goods to AAR's specified destination and tender the goods at that point.  And in the absence of such an express obligation, the contract could not have been a destination contract with an F.O.B. the place of destination.  *See, e.g.*, *Windows, Inc. v. Jordan Panel Sys. Corp.*, 177 F.3d 114, 117 (2d Cir. 1999) (concluding that a contract providing that the goods must "be

---

(3) Where the seller is required to deliver at a particular destination tender requires that he comply with subsection (1) and also in any appropriate case tender documents as described in subsections (4) and (5) of this Section.

810 Ill. Comp. Stat. 5/2-503(2)–(3).

shipped properly crated/packaged/boxed suitable for cross country motor freight transit and delivered to New York City" is a shipment contract because "[t]o overcome the presumption favoring shipment contracts, the parties must have explicitly agreed to impose on [the seller] the obligation to effect delivery at a particular destination" (construing New York's enactment of the UCC); *c.f. June G. Ashton Interiors*, 491 N.E.2d at 124–25 (explaining that a subsequent agreement between the parties converted the shipment contract into a destination contract because the seller "agreed to deliver" the goods to the buyer's location on a specified date). *See also generally*, 1 White, Summers, & Hillman, Uniform Commercial Code § 6:4 (6th ed. updated Aug. 2020) ("[A] contract which contains neither an F.O.B. term nor any other term explicitly allocating loss is a 'shipment' contract. This is so although the seller has agreed to pay the shipment cost. . . . [T]he parties, in a contract contemplating carriage, must *explicitly* agree to a destination contract by using 'F.O.B. buyer's place of business' or equivalent language. Otherwise, the contract will be a 'shipment" contract.'" (footnote omitted) (emphasis in original)). The parties' agreement that the Debtor would pay for shipping was therefore insufficient to convert the Purchase Order into a destination contract.

The Trustee contends that the emails modified key terms and that "under the modified shipping terms, the Debtor could not complete its performance" at the

11

specified F.O.B. location (origin) because the Debtor assumed responsibilities

beyond "mak[ing] the shipment available on its loading dock for pickup by AAR."

ECF No. 13 at 26.   But nothing in the emails states that the Debtor had to assume

the responsibility of delivery, and the Purchase Order provides that title and risk of

loss passes at the origin point.  And in any event, the presumption in favor of

shipment contracts weighs against the Trustee's argument that the Debtor's

agreement to be the "shipper of record" was tantamount to the creation of a

destination contract. [6]

The Trustee further argues that the Supreme Court's holding in *Barnhill v.*

*Johnson*, 503 U.S. 393 (1992), that the "transfer" of a bank check occurs when it is

honored by the drawee bank and not when it is received by the payee.  ECF No. 13

at 24–25.  The Supreme Court decided *Barnhill* under Article Three of the UCC,

which governs negotiable instruments.  The aircraft parts at issue here, however,

are goods, not negotiable instruments and the Court will not look to Article Three

of the UCC when the answer lies in Article Two.  *Compare Geneva Int'l Corp. v.*

*Petrof, Spol, S.R.O.*, 608 F. Supp. 2d 993, 999 (N.D. Ill. 2009) ("If the contract is

predominantly for the sale of goods . . . the contract will be governed by Article 2

---

[6]  The Court observes that the Bankruptcy Court issued its order without the benefit
of Island Leasing's briefing on the issue of whether the Debtor's agreement to be
the "shipper of record" affected when title to the aircraft parts passed under the
Purchase Order, as the Trustee raised this argument for the first time in her reply
memorandum below.  ER00815-18.

of the UCC." (citation omitted)), *with Johnson v. Bank of Am., N.A.*, C/A No. 3:09-1600-JFA, 2010 WL 1542560, at \*2 (D.S.C. Apr. 16, 2010) ("Article[] 3 appears constrained in its application to the various issues arising out of the handling of negotiable instruments themselves." (citation omitted)).  The Ninth Circuit Bankruptcy Appeals Panel further held that the pertinent holding *Barnhill* is limited to ordinary checks and does not apply even to cashier's checks.  *In re Mora*, 218 B.R. 71, 76 (B.A.P. 9th Cir. 1998), *aff'd*, 199 F.3d 1024 (9th Cir. 1999).

The Trustee also argues that as the shipper of record, the Debtor had the authority to stop shipment to AAR and have the goods diverted and brought back.  ECF No. 13 at 28.  While it may be possible that FedEx would have obeyed a directive from the Debtor to stop shipment,[7] this practical reality does not substitute for the UCC's provisions regarding the transfer of title.  Indeed, under the UCC, title and the authority to stop shipment are not necessarily concomitant.  *See In re TSAWD Holdings, Inc.*, 574 B.R. 482, 486 (Bankr. D. Del. 2017) (explaining that a seller has the right under Article Two, Section 705 of the UCC to stop shipment of goods to an insolvent buyer, even when title to the goods already passed to the buyer) (applying Delaware's enactment of the UCC).

---

[7] If FedEx were to have stopped shipment at the Debtor's directive, that would likely have been because FedEx was in privity with the Debtor, and not because of FedEx's determination of which party had title to the goods.

13

Finally, the Trustee contends that because AAR hoped to avoid taxes by not paying for shipping, it must have intended for title to transfer upon delivery.  But the emails are completely silent regarding when title transferred, and this inference is too significant a leap, especially at the summary judgment stage, and particularly where the UCC presumes a contract is a "shipment contract."  And even if AAR had intended for title to transfer upon delivery for tax purposes, there is no evidence that the Debtor assented to a modification of the Purchase Order's provisions regarding title transfer.

The Bankruptcy Court therefore erred when it ruled that the October 16 Shipment was a post-petition transfer.

Having concluded that the October 16 Shipment was not a post-petition transfer, the Court need not determine whether Island Leasing was the entity for whose benefit the transfer was made.

//

//

//

//

//

//

//

14

## IV.    CONCLUSION

For the reasons set forth above, the Court VACATES the Bankruptcy

Court's July 19, 2019 Order on Plaintiff's Motion for Partial Summary Judgment

and REMANDS the action to the Bankruptcy Court for further proceedings

consistent with this Order.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaiʻi, November 10, 2020.



Jill A. Otake
United States District Judge

CV 20-00240 JAO-RT; *Island Leasing, LLC v. Elizabeth A. Kane, Bankruptcy Trustee, et al.*; ORDER VACATING BANKRUPTCY COURT'S ORDER ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT